IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

RECEIVED
SEP 11 2017
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

KELVIN BROWN §
§
Plaintiff, §
§
v. §
§ SA17CA0884 DAE
ACE AMERICA INSURANCE COMPANY, §
§ CASE NUMBER: _____
PA §
§
Defendants. §

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW PLAINTIFF, KELVIN BROWN (hereinafter referred to as "Plaintiff"), complaining of Defendant ACE AMERICA INSURANCE CO, SWITZERLAND / PENNSYLVANIA, LLC and for a cause of action would respectfully show unto the courts as follows:

## DISCOVERY

Discovery Control Plan, pursuant to Rule 190.3 of the Texas Rules of Civil Procedure and or 26 through 37 of Title V of the Federal Rules of Civil Procedure, Discovery Control Plan Level Two governs this lawsuit. Request For Disclosure. Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendants are requested to disclose, within 50 days of service of this request, the information described in Rule 194.2 of the Texas Rules of Civil Procedure.

## PARTIES I

1. Plaintiff KELVIN BROWN AKA RECTOR is a resident of the State of Texas. Plaintiff currently resides in Bexar County, Texas and has resided there at all times material to lawsuit (FMR) 9430 WINDING ELM PL SAN ANTONIO TX, 78254

2. Defendant Ace America Insurance Company is a foreign corporation located at Barengasse 32, Zurich, Canton of Zurich Switzerland 8001 and incorporated in the State of Pennsylvania and principal place of business is located at Po Box 1000, 436 Walnut Street Philadelphia PA 19106.

1

### MISNOMER / MISIDENTIFICATION

In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer" and/or such parties were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

### JURISDICTION & VENUE II

3. Venue is proper in the Bexar County Western District Federal Court because personal jurisdiction is limited/ specific, over the Defendant because it's a Federal Question Case ( please see 28 U.S.C. § 1331 cases where the issue involves violation of Federal Law ) and Diversity Case ( please see 28 U.S.C. § 1332 cases where the Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs ) The Defendant violated The Uniform Deceptive Trade Practices Act. The Defendant and the Plaintiff are citizens of different states and or countries.

   Plaintiff has suffered damages in the amount of two million, seven thousand and two hundred dollars ($2,007,200.00). This amount is within the jurisdictional limits of this court. Pursuant Federal Civil Procedure Rule 28 U.S.C. § 1332, Plaintiff in good faith pleads that the value of this case exceeds seventy five thousand dollars$ ($75,000.00).

### STATEMENT OF FACTS III

4. At all times relevant to this case of action Plaintiff at the time of his independent contractor duty was a policyholder of the Defendant. According to 26 U.S. Code 414(n) The policy is not governed by ERISA.

The Defendant AAIC has violated the Texas Insurance Code and the Texas Deceptive Trade Practices Act ("DTPA"), as well as for breach of the duty of good faith and fair dealing,

The Defendant awarded the Plaintiff's Disability Income benefits for his occupational Injury sustained on September 15, 2015 and paid benefits up until September 1, 2016 (estimate of about 52 weeks). The

2

Defendant erroneously states that the same occupational injury they awarded benefits is now no longer supported without evidence of a reasonable investigation. The Plaintiff has already been receiving IDB benefits for his impairments. In McCartha v. Nat's City Corp., 419 F.3d 437, 446 (6th Cir. 2005), the Courts concluded: "The Administrator must state all the grounds on which it ultimately relies on in the original denial letter." Thus the Defendant's argument that the Plaintiff's disability is no longer supported without stating on all grounds on which it ultimately relied upon in its original determination makes this argument obsolete without any reasonable justification. The Defendant's claim is groundless.

The Defendant's decision was not based on the requirements and criteria required to prove disability per the policy. The Defendant is in direct violation of Texas Law. AAIC's conduct constitutes unfair and deceptive acts and practices, as well as misrepresentations, in the business of insurance in violation of §§ 541.051, 541.052, 541.060, 541.061 and others of the Texas Insurance Code.

The Plaintiff's Disability Income Benefit Policy provisions require the following criteria to be met:

Definitions Page 22 (KB.GALL.27)

Occupational Accident:

A sudden, unforeseen event, or series of events that are work related and that result in bodily injury within 72 hours of the date of the event. This event must meet all the following:

(1) It must happen while You are Under Contract with the Policyholder and performing Your contract obligations under that contract.

(2) It must happen while You are covered under this Plan.

(3) The bodily injury must result directly from the Occupational Accident and not be the result of any other cause.

Occupational Accident does not include any of the following:

(1) Aggression in a fight. (2) Hernia of any type, unless such hernia: a) appeared suddenly and immediately following an Occupational Accident; b) did not exist in any degree prior to the Occupational Accident; c) was accompanied by pain; and d) required immediate medical attention (3) Suicide or attempted suicide. (4) Cumulative Trauma, unless specifically covered by this Plan. (5) Occupational Disease, unless specifically covered by this Plan.

The Plaintiff was injured during the course of his occupation when he tried to lift and align his trailer onto his truck using a crankshaft that was stuck and required the Plaintiff to use maximum force and exertion which resulted in the onset of his lower back pain/ injury that occurred on September 15, 2015.

3

The Plaintiff met all three (3) criteria of the Defendant's Occupational Accident policy provision that were initially awarded to him.

The Defendant Failed to Perform a Vocational Analysis of the Plaintiff's Occupation as an Independent Contractor. The Defendant failed to reasonably base its determination on Clear Policy language.

The Defendant terminated the Plaintiff's claim for benefits without conducting a reasonable investigation of the Plaintiff's policy's requirements. The definition of Total Disability requires the Plaintiff have the inability to perform all the material and substantial duties of his Regular Occupation. The Defendant failed to investigate the Plaintiff's Regular Occupation. (A crucial element of proving, whether or not, a claimant is totally disabled.)

The first step in determining whether a claimant is totally disabled from their regular occupation is to start with a listing of the material and substantial duties of that occupation at issue. Without this analysis and determination the Defendant's consultant reviewers cannot determine what residual functional capacity the Plaintiff needs in order to be considered Totally Disabled under his Disability Income Benefits. The Defendant's reviewers do not mention any "duties" or "functions" in its denial letter nor did Defendant provide any vocational assessment of the Plaintiff's occupation to justify its determination, which is an important and critical piece of the Plaintiff's disability claim. The Defendant has unlawfully and unfairly misinterpreted the definition of Total disability to one that heightens the apparent burden on the Plaintiff to prove his disability. This material misinterpretation to the Plaintiff, implying a different standard of the plain reading of the plans definition to appear less favorable is a direct violation of Texas Law.

Clearly, the Plaintiff's well-being would be severely compromised and he wouldn't be unable to sustain this type of physically demanding work. Therefore, the Defendant's determination is not reasonable or reliable given the medical records as a whole supports that the Plaintiff does not have the functional capacity to sustain his regular occupation at this time.

The Plaintiff met the criteria of the policy and is Totally Disabled per the terms of the policy. The Defendant refused to base its decision on the terms of the policy. The Defendant tries to discredit evidence to reach a termination of benefits made without substantial evidence. Consequently, the Defendant's conduct is prohibited by the Deceptive Trade Practices Act ("DTPA") governing the claim. The Defendant has the fiduciary duty to evince specificity, clarity, and transparency in the interpretation of its policy definitions and has an affirmative duty to communicate these truthfully. The absence of material language affecting the plain reading of the policy is a contravention of the Defendant's fiduciary duty, which falls far short of this obligation.

The Defendant's Determination to Award The Plaintiff's Disability Income Benefits was not made in Error and Stands Affirmatively because the Plaintiff met the terms of his plan and was awarded benefits in reflection.

4

The Defendant was provided medical evidence at the time the Plaintiff filed for benefits and clinically documenting on the Plaintiff's occupational injury.   The reasons given by the Defendant are not rational once known facts are more closely examined. The termination by the Defendant was erroneous as well as arbitrary.  See Deegan v. Continental Casualty Company, Nos 98-15071, 98-15153 (9th Cir. 1999)

The Defendant breached its Fiduciary Duty by presenting several material misrepresentations of the Plan's true meaning to support a termination of benefits and request overpayments of benefits of the Plaintiff.

The Defendant's November 7, 2016, decision to terminate the policy undermines the confidence of its first outcome in awarding benefits to the Plaintiff. Further, the Defendant's decision to terminate the Plaintiff's Income Disability Benefits is made with obvious legal error and seriously affects the fairness and integrity of the Plan that undoubtedly shows the Defendant's abuse of discretion.

The Defendant contends that the Plaintiff was not forthcoming in his filing for disability benefits when he initially went out of work as an Independent Contractor.  The Defendant concludes that his claim for disability benefits altogether was made in error and that the Plaintiff is now liable to repayment. The record refutes this conclusion with factual evidence to show otherwise and that the Defendant's termination was done so with an abuse of discretion, violating Texas law and its fiduciary duty to provide a reasonable claims process.  All records and information submitted to the Defendant were sent forthcoming upon each request as soon as reasonably possible.

The Defendant is in violation of Sec. 541.053, Defamation of an Insurer. (a)  It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to directly or indirectly make, publish, disseminate, or circulate or to aid, abet, or encourage the making, publication, dissemination, or circulation of a statement that:

(1)  is false, maliciously critical of, or derogatory to the financial condition of an insurer; and

 (2)  is calculated to injure a person engaged in the business of insurance. (b)  This section applies to any oral or written statement, including a statement in any pamphlet, circular, article, or literature.

As a result of the Defendant's negligence and prejudiced review, The Plaintiff has suffered actual damages in the form of past due benefits and continues to suffer actual damages in the amount of future benefits, as well as mental anguish from the Defendant's deceptive trade practices.  The Defendant has an obligation to establish and maintain reasonable claims procedures.  The Defendant and its agents are required by law to ensure that its actions are for the benefit of its participants.

The Defendant made false allegations stating that the Plaintiff had a preexisting condition and his medical illness is the reason for his injury.

5

Under contract law, exclusions must be interpreted narrowly and established by substantial evidence. it is also well-established by federal case law that the burden is upon the insurer to demonstrate that the insured's claim falls within the terms of an exclusionary clause, and that such clauses are interpreted narrowly. A pre-existing condition clause is such an exclusionary clause, warranting narrow interpretation. Courts have found that before imposing a pre-existing condition limitation, plan sponsors must carefully evaluate whether a particular condition is "directly attributable" to the pre-existing condition. Medical conditions which merely "contribute towards" accidents or illnesses, but are not "directly attributable" to the pre-existing condition may not be excluded. Further, "a pre-existing infirmity or disease is not to be considered as a cause unless it substantially contributed to the disability or loss. [A] 'predisposition' or 'susceptibility' to injury, whether it results from congenital weakness or from previous illness or injury, does not amount to a substantial contributing cause. A mere 'relationship' of undetermined degree is not enough." Colonial Life & Accident Ins. Co. v. Weartz, 636 S.W.2d 891 (Ky. Ct. App. 1982)(internal citations omitted).

The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with the governing plan document and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants. The Defendant's initial award of benefits was reasonably reviewed before awarding benefits and had already been reviewed for a pre-existing exclusion. The Defendant's claim is groundless as the Plaintiff was already paid benefits for his disabilities.

AAIC's Defense Medical Examinations are Discriminatory in Nature and are Unreasonable and Unreliable.

The Defendant notes that two (2) Independent Medical Examinations ("IME") were performed on the Plaintiff on April 6, 2016 and on August 4, 2016. These examinations are referred to as a Defense Medical Examinations ("DME"), because these physicians are not independent doctors. These physicians who examined the Plaintiff were hired by the Defendant and were paid by the Defendant. Often, these doctors derive a significant percentage of their income from such exams which creates a bias. Accordingly, these physicians had a financial incentive to produce favorable reports on behalf of the Defendant.   Lawrence Lenderman, M.D., P.A. On April 6, 2016, a defense medial examination was conducted by Lawrence Lenderman, M.D., P.A., Board Certified in Orthopedic Surgery on the Plaintiff's claim. The Defendant does not provide how much Dr. Lenderman was paid for his services; however, his examination erred as follows:

1. Dr. Lenderman did not speak with Plaintiff's physician(s).

2. Dr. Lenderman is an orthopedic surgeon not a pain management physician. An Orthopedic surgeon would only be consulted if all conservative remedies had been exhausted.

3. Dr. Lenderman's examination ignores or is contrary to controlling medical authority such as the National Standards for The American Academy of Neurology.

6

4. Dr. Lenderman's examination fails to specify the medical standard upon which it relies.

5. Dr. Lenderman's examination is based on faulty or incorrect information.

6. Dr. Lenderman's report is conclusory.

7. Dr. Lenderman's examination cherry picks the information by over emphasizing information that supports the insurer's position and de-emphasizing information that supports disability.

8. Dr. Lenderman failed to consider the Plaintiff's regular occupation. (i.e. fast pace, stress, physical demands, etc.)

9. Dr. Lenderman failed to credit credible complaints of the Plaintiff's inability to physically work in his manual labor occupation.

10. Dr. Lenderman conducted a selective review of records.

11. Dr. Lenderman failed to apply the proper definition of disability. The report does not consider the standard of disability specified in the policy.

12. Dr. Lenderman failed to credit the Plaintiff's treating physician's opinions.

13. Dr. Lenderman's addendum dated May 31, 2016 just restates his initial report with no new evidence to support his position.

14. Dr. Lenderman's examination lasted a total of 21 minutes and the initial exam itself lasted approximately 10 minutes.

15. Dr. Lenderman's report uses derogatory and biased words of "apparently', 'essentially'


Patrick Waikem, DC Letter of Rebuttal of Dr. Lenderman's Defense Medical Examination – 5/19/16 On May 19, 2016, Dr. Waikem wrote a rebuttal letter on behalf of the Plaintiff that stated:

"I am in receipt of the IME report by Dr. Lenderman, M.D. I disagree with Dr. Lenderman's opinion that epidural steroid injections are not indicated. The lumbar MRI on 12/28/15 had impression of L4/L5 mild broad-based right paracentral disc herniation contributing to moderate central canal stenosis with right lateral recess and right neural foraminal narrowing, which may affect the right L4 and L5 nerve roots. The MRI findings correlate with my initial exam of hypoesthesia along the L3, L4, and L5 dermatome with pinwheel testing. The ODG guidelines are the following when ESI's are indicated: The American Academy of Neurology recently concluded that epidural steroid injections may lead to an improvement in radicular pain between 2 and 6 weeks following the injection...Epidural steroid injection can offer short-term pain relief and use should be in conjunction with other rehab effects, including continuing a home exercise program. .... Lenderman opinion that Mr. Brown shouldn't be returning to work without restrictions. Mr. Brown is currently taking [medications] that include codeine which is a narcotic. This would preclude him from being able to return to work since he operates a tractor-trailer."

7

After the Plaintiff preformed his first IME, Plaintiff with to another Orthopedic Surgeon and had his MRI read and the Surgeon was honest. Dr. Duncan gave the Plaintiff a 68 percent disability rating and diagnosed him with radiculopathy

Spondylosis would prove a pre-existing conditions because Spondylosis defines pre-existing. If an individual has spondylosis this would confirm a cumulative injury that took place over a period of time because spondylosis is referred to as spinal osteoarthrosis, the age-related wear and tear of the spinal column, which is the most common cause of spondylosis.

Dr. Duncan diagnosed the Plaintiff with Lumbar radiculopathy, herniated disc and spondylolisthesis. Dr. Duncan didn't diagnose the plaintiff with osteoarthrosis.

Osteoarthritis (OA) is a joint disease represented by degeneration of cartilage, meniscus, subchondral bone, and other tissues due to ageing and mechanical load, abnormal proliferation of synovium, and bone and cartilage overgrowth.

Gilbert R. Meadows, M.D.

On August 4, 2016, a defense medical examination was conducted by Gilbert R. Meadows, M.D., Board Certified in orthopedic surgery and spinal surgery on the plaintiff's claim. The Defendant does not provide how much Dr. Meadows was paid for his services; however, Dr. Meadows' examination erred as follows:

1. Dr. Meadows did not speak with Plaintiff's physician(s).

2. Dr. Meadows is an orthopedic surgeon not a pain management physician. An Orthopedic surgeon would only be consulted if all conservative remedies had been exhausted.

3. Dr. Meadows' examination ignores or is contrary to controlling medical authority such as the National Standards for The American Academy of Neurology.

4. Dr. Meadows' examination fails to specify the medical standard upon which it relies.

5. Dr. Meadows' examination is based on faulty or incorrect information.

6. Dr. Meadows' report is conclusory.

7. Dr. Meadows' examination cherry picks the information by over emphasizing information that supports the insurer's position and de-emphasizing information that supports disability.

8. Dr. Meadows failed to consider the Plaintiff's regular occupation. (i.e. fast pace, stress, physical demands, etc.)

8

9. Dr. Meadows failed to credit credible complaints of his inability to physically work in his manual labor occupation.

10. Dr. Meadows conducted a selective review of records.

11. Dr. Meadows failed to apply the proper definition of disability. The report does not consider the standard of disability specified in the policy.

12. Dr. Meadows failed to credit Mr. Brown's treating physician's opinions.

13. Dr. Meadows' examination lasted a total of 46 minutes, out of the 46 minutes he only performed a 5 to 6 minute examination.

14. Dr. Meadows' falsely accuses Mr. Brown of symptom magnification without any testing to confirm such biased opinion.

The Defendant at best was over zealous in relying upon this information to determine that the Plaintiff is capable of doing his regular occupation. It is clear that the Plaintiff would not be capable of sustaining this type of work continuously on a day to day basis.

Neither Dr. Lenderman nor Dr. Meadows can scientifically project a claimant's ability to perform a 5 day a week job on a continuous basis based on an examination that was less than an hour. The Defendant's exam failed to meet the established standards and failed to truly measure the Plaintiff's physical abilities required in his regular occupation. Both examinations were biased in nature and unreliable given the medical records as a whole support that would not be able to return to his regular occupation due to his severe back impairments sustained on September 15, 2015.

The Defendant Failed to Conduct a Reasonable Investigation of the Plaintiff's Claim.

The Defendant appears to have gone to great lengths to create/manufacture favorable evidence in regard to this claim. These actions are indicative of an active conflict of interest present in the Plaintiff's claim. The Defendant is charged with paying out claims on its insurance policies but has also reserved the right to interpret the policy terms giving the Defendant the unique advantage to deny credible claims.

The Defendant has displayed unfair practices with their procedures and denial of the Plaintiff's claim for benefits. Under section 51:1408, Court may grant additional relief to compensate any aggrieved parties.

The Defendant has also used unfair settlement practices on the Plaintiff's claims with the Defendant. Pursuant to section 541.060, the Defendant has behaved unfairly and deceptively in the business of insurance by engaging in the following settlement practices with respect to a claim by an insured or beneficiary:

9

(1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;

(2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:

(A) a claim with respect to which the Defendant's liability has become reasonably clear; or

(B) a claim under one portion of a policy with respect to which the Defendant's liability has become reasonably clear to influence the claimant to settle another claim under another portion of the coverage unless payment under one portion of the coverage constitutes evidence of liability under another portion;

(3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the Defendant's denial of a claim or offer of a compromise settlement of a claim;

(4) failing within a reasonable time to:

(A) affirm or deny coverage of a claim to a policyholder; or

(B) submit a reservation of rights to a policyholder;

(5) refusing, failing, or unreasonably delaying a settlement offer under applicable first- party coverage on the basis that other coverage may be available or that third parties are responsible for the damages suffered, except as may be specifically provided in the policy;

(6) undertaking to enforce a full and final release of a claim from a policyholder when only a partial payment has been made, unless the payment is a compromise settlement of a doubtful or disputed claim;

(7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim;

(8) requiring a claimant as a condition of settling a claim to produce the claimant's federal income tax returns for examination or investigation by the person unless:

(A) a court orders the claimant to produce those tax returns;

(B) the claim involves a fire loss; or

(C) the claim involves lost profits or income.

(b) Subsection (a) does not provide a cause of action to a third party asserting one or more claims against an insured covered under a liability insurance policy.

The Defendant may not "sandbag" a claimant by failing to permit the claimant to review and comment upon all documents, records, and information relevant to the claim. See Abram v. Cargill, Inc., 2005 U.S. App. LEXIS 1142 *8-11 (8th Cir. 2005) ("The process used by the Plan was not consistent with a full and fair review. Abram was not provided access to the second report by Dr. Gedan that served as a basis for

10

the Plan's denial of benefits until after the Plan's decision).  See also, Saffon v. Wells Fargo & Co. Long Term Disability Plan, 511 F.3d 1206, 1215 (9th Cir. 2008) ("Insofar as MetLife believed that a Functional Capacity Evaluation, or some other means of objectively testing Saffon's ability to perform her job, was necessary for it to evaluate Saffon's claim, it was required to say so at a time when Saffon had a fair chance to present evidence on this point."); Kosiba v. Merck, 384 F.3d 58 (3d Cir. 2004) (the Defendant's hiring of a reviewing doctor after a claim decision was made undermines any deference being given to the Defendant's decision.).

## ALLEGORY CONCLUSION

The Defendant breached its duty of good faith and fair dealing by terminating and delaying full payment of benefits to the Plaintiff when the Defendant's obligations were reasonably clear and the Defendant knew or should have known that there was no reasonable basis for withholding any part of the Plaintiff's payment.

Defendant has thus failed to effectuate a prompt, fair, and equitable settlement of the Plaintiff's claim, though the Defendant's liability remains consistently clear.  As a result of this breach of duty of good faith and fair dealing, the Plaintiff suffered damages consisting of the loss of the benefit-of-the-bargain that he reasonably expected to be due under the Plan.

 The Defendant has been provided substantial evidence by the Plaintiff's treating physicians, who found that the Plaintiff is not able to work at this time.  The Defendant de-emphasized medical evidence suggesting a contrary conclusion and the record as a whole does not support the Defendant's termination of benefits.

AAIC's Breach of Contract

The Defendant's conduct constitutes a breach of the Plan.  The Plan is a contract as its existence arose from a bargained for exchange between the Plaintiff and the Defendant.  The Defendant failed to perform in accordance with the terms of the Plan.  The Plaintiff has incurred losses, which should have been compensated by the Defendant as those losses were covered under the Plan.  The Defendant has failed to perform its obligations under the contract by failing to pay the full amount of the Plaintiff's claim by terminating benefits to the Plaintiff. This conduct constitutes a breach of the contract between the Plaintiff and Defendant

The Defendant's Violations of the Texas Insurance Code  It is our contention that the Defendant's conduct constitutes unfair and deceptive acts and practices, as well as misrepresentations, in the

11

business of insurance in violation of §§ 541.051, 541.052, 541.060, 541.061 and others of the Texas Insurance Code.

As part of its common law duty, and as codified in the Insurance Code, an insurer has an obligation to conduct an adequate investigation before terminating a claim. An insurer will not escape liability merely by failing to investigate a claim so that it can contend that liability was never reasonably clear.

The Defendant violated the Texas Deceptive Trade Practices Act ("DTPA"), which is part of the Business and Commerce Code. The Defendant has misrepresented characteristics, benefits, obligations, and other aspects dealing with the contract for Income Disability Benefits and Accident Medical/Dental expense benefits, violating the Business and Commerce Code § 17.46 and others.

An insurer breaches its duty of good faith and fair dealing when "the insurer had no reasonable basis for denying or delaying payment of [a] claim, and [the insurer] knew or should have known that fact." Transportation Ins. Co. V. Moriel, 879 S.W. 2d 10, 18 (Tex. 1994); see Aranda v. Insurance Co. Of N. Am., 748 S.W. 2d 210, 213 (Tex. 1988). Under Texas law, carriers will maintain the right to deny invalid or questionable claims and will not be subject to liability for an erroneous denial of a claim. Carriers that breach the duty of good faith and fair dealing, however, will be subject to liability for their tortious conduct. An insurer will not escape liability merely by failing to investigate a claim so that it can contend that liability was never reasonably clear. An insurance company may also breach its duty of good faith and fair dealing by failing to reasonably investigate a claim.

## DAMAGES IV

5. Although the Plaintiff has been cooperative and forthcoming during his claim for disability benefits in proper form and within a reasonable time specified by the policy, the Defendant terminated his claim. There was and is no justifiable basis for this termination. As a result, the Plaintiff has suffered actual damages in the form of past due benefits and continues to suffer actual damages in the amount of benefits he would be entitled to in the future as he continues to remain " totally disabled." Further, the Defendant's wrongful termination of the Plaintiff's full claim has caused the Plaintiff to suffer severe mental anguish with unpaid medical expenses for spinal / dental surgery. Plaintiff has incurred other medical attention in the past. These expenses incurred were necessary for the care and treatment of the injuries sustained by Plaintiff, and the changes made and to be made were the usual and customary charges for such services. Plaintiff will require further medical care that falls outside the scope of medicare and attention and will necessarily incure reasonable expenses in the furture for such medical needs. Plantiff makes a claim herein for all past and future medical care.

12

Plaintiff has suffered mental pain and anguish in the past. Plaintiff will continue to suffer mental pain and anguish in the future.

As a result of lost treatment Plaintiff has suffered and will continue to suffer impairment to his body.

The plaintiff has documents that state Mr. William Craven is the doctor over looking the appeal decision. On 09/08/17 the Plaintiff spoke with Mr. William Craven and Mr. Craven stated that the law firm would have a decision regarding the claim decision by 09/15/17. Mr. Craven also stated that they believe the injury is pre-existing. The Defendant hasn't made a decision to settle my claim in two years. The Defendant has exercised bad faith using unlawful delay tactics. The reason the Defendant is waiting until 09/15/17 to cast a decision regarding the Plaintiffs claim is because after this date the Plaintiffs statue of limitation expires. After the statue of limitation expires the Plaintiffs won't be able to sue the defendant for bad faith and deceptive practice and this would render the Plaintiffs case groundless.

The Defendant's unlawful trade practices have caused the Plaintiff harm as follows:

Lost residence

Lost all furniture

Major debt

Car repo

Credit destroyed

Living in dangerous community

Unable to receive medical treatment

Increased physical pain

Depression

Financial loss

Failure to provide for family

Unable to attend dental/back surgery

Increased sickness

Extreme Poverty

Personal Social rejection b/c situation

Anxiety

Mental frustration and anguish

Potential shortening of life due to pain medication

Phantom pain

Extreme paranoia

Extreme Bipolar

Personal social anxiety

Compulsive disorder

Personality disorder

Adjustment disorder to environment

Sleep disorder

Severe confusion

Not wanting to be

Chronic Headaches

Tiredness / dizzy

Increased nightmares

Feeling endangered


This is just to name a few life altering events that have taken place and or increased since the Defendant wrongfully canceled the Plaintiff's insurance policy


Due to the Defendants acts of bad faith and deceptive trade practice the Plaintiff is entitled to punitive damages because of the Defendant's gross negligence. The Defendant's acts or omissions, involved an extreme degree of mental anguish, pain and suffering and physical harm and or pain from non medical treatment. The Defendant had actual, subjective awareness of the risk in which the Defendant inflicted upon the Plaintiff, but nevertheless proceeded with conscious indifference to the rights and welfare of the Plaintiff. Plaintiff is entitled to punitive damages in a sufficient amount to punish Defendant for its

reckless, heedless and intentional conduct and to set an example for others that such conduct will not be tolerated.

Financial Damage Relief are as follows:

Average Chiropractor expenses ( $75.00wk x 4wks = 300.00mo x 12mo = $3,600.00yr x 32yrs =$115,200.00 )

Total disability ( 700.00wk x 4wks = 2,800.00mo x 12mo = $33,600.00yr x 32yrs = $1,075,200.00)

Radiculopathy / Stenosis surgery  ( $115,000.00 )

Pain and suffering for past, present and future. $700,000.00

Total damages $2,007,200.00

All the Plaintiffs future medical expenses are unknown at this time.  Plaintiff will supplement as discovery continues.

Furthermore, the monetary value of the Plaintiff's past and future pain and suffering is left up to the discretion of the jury.

The monetary value of plaintiffs past and future impairment is left up to the discretion of the jury.

The Plaintiff asserts common law negligence claim against Defendant.

## JURY DEMAND

Plaintiff demands a jury on all issues so triable.  He has tendered the appropriate fee.

**PRAYER**

WHEREFORE, PREMISES, CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer, and that upon final trial, Plaintiff have judgment against Defendant for all relief requested, for pre-judgment interest, post judgment interest, for cost of this suit, and for such other and further relief, general and special, at law or in equity, to which Plaintiff is entitled.

Respectfully submitted,

/S/ Kelvin Brown

*[signature]* 09/11/17

9430 Windmy elm pl
Sen Antonio TX 78254